LEAVITT, Appellant, v. TAYLOR et ux.

Division Two, May 21, 1901.

1. **Practice:** FINDING OF FACTS: NO EXCEPTIONS. Where the trial court, in response to a proper motion, makes a finding of facts separate and apart from the conclusions of law, and no exceptions are saved thereto, it stands as a special verdict or agreed case. And if the conclusions of law, under the facts found, are correct, the judgment must stand. Under such circumstances the finding of facts is not subject to review on appeal.

2. ————: NO FINDING AS TO SOME DEFENDANTS: REVIEW. Where there has been no finding of facts as to one of the defendants in an equity case, the evidence as to him is reviewable on appeal, and the case, in so far as his rights are concerned, is practically triable *de novo*.

3. **Negotiable Note:** NO CONSIDERATION: INNOCENT PURCHASER: SUSPICION: ACTUAL NOTICE. Mere suspicion that a negotiable note is

Leavitt v. Taylor.

without consideration, or was obtained by fraud brought home to the transferee before he acquired it, will not be sufficient to defeat a recovery thereon, but in order to do so, actual notice of the facts which will impeach its validity must be brought home to him.

4.  ——— : ——— : CASE STATED. A note payable to a machine company, was given under promise, so the maker testified, that he was to have the exclusive right to sell, in three counties, a patent fence machine owned by the company. The deed conferring such exclusive right was never made, and the maker of the note received nothing therefor. The plaintiff knew the company was a corporation, and that several of its officers were bankers. The agent transferred the note to him as its agent and he agreed to give him about two-thirds of the face value of the note therefor, and gave him his check for that amount, and the check does not appear to have been paid. The note was signed by a married woman, the owner of the land conveyed by the deed of trust to secure the note, and her husband, and the plaintiff made no inquiry as to whether the note of a married woman was then valid under the laws of the State where made. The evidence is reviewed, and it is *held*, that the transferee had knowledge of the fraudulent character of the note, that it was without consideration, and he can not recover thereon, and the note and deed of trust should be cancelled.

Appeal from Gentry Circuit Court.—*Hon. C. A. Anthony,* Judge.

AFFIRMED.

*Meservey, Pierce & German* and *W. S. Jenks* for appellant.

(1)  The evidence was not sufficiently clear, cogent and convincing to overcome the certificate of acknowledgement of the notary public of the deed of trust. Webb v. Webb, 87 Mo. 540; Rust v. Goff, 94 Mo. 511; Comings v. Leedy, 114 Mo. 454.  (2)  But even if the evidence justified the cancellation of the deed of trust because not properly acknowledged, the court erred in cancelling the note.  (a)  There was no evidence whatever tending to prove either fraud or failure of

consideration as to the defendant L. W. Taylor.   He himself testified that he knew what he was signing and intended both to sign a note for $800 and valid mortgage or deed of trust. The consideration was a good and valid one and the evidence clearly shows that if he failed to receive any benefit from the contract it was from his own negligence and lack of effort. (b)   As to Mrs. Taylor, while she denies that she understood she was signing a note, she knew she was signing some contract, and ought to be estopped by her negligence in failing to learn the contents of the note.   Shirts v. Overjohn, 60 Mo. 309.   (c) But neither fraud nor failure of consideration are available as a defense to a note in the hands of a bona fide purchaser for value before maturity by one having no actual notice of any defense to the note at the time of the purchase.   Investment Co. v. Vette, 142 Mo. 560; Jennings v. Todd, 118 Mo. 296; Mayes v. Robinson, 93 Mo. 114; Johnson v. McMurry, 72 Mo. 278; Hamilton v. Marks, 63 Mo. 167.

*Peery & Lyons* and *McCullough & Sullinger* for respondents.

(1)   When the circumstances surrounding the case, as shown by the evidence, are considered in connection with the direct evidence, there can be no doubt that the certificate of the notary was fraudulent, and that in fact he was employed and taken to King City for the purpose of making a fraudulent certificate.   Comings v. Leedy, 114 Mo. 477; Wannell v. Kem, 57 Mo. 480; Spring. E. & T. Co. v. Donovan, 147 Mo. 630.   (2)   The defendant Maggie B. Taylor, having been married to her co-defendant in 1870, and having acquired title to this land in 1884 by a conveyance which did not create any separate equitable estate in her, it was her general estate, to which the marital rights of her husband attached prior to the

amendments of 1889.   It follows that those statutory amendments could not operate retroactively so as to affect the marital rights of the husband, nor to enable Mrs. Taylor to convey her land otherwise than by a deed duly executed and acknowledged as required by Revised Statutes 1899, section 901.   Leete v. Bank, 141 Mo. 584; s. c., 115 Mo. 184; Arnold v. Willis, 128 Mo. 150; Reed v. Swan, 133 Mo. 100; Winn v. Riley, 151 Mo. 61; McReynolds v. Grubb, 150 Mo. 363; Hurt v. Cook, 151 Mo. 416; Nichols v. Nichols, 147 Mo. 387; Clay, v. Mayr, 144 Mo. 376; Bartlett v. Ball, 142 Mo. 28.   (3) Under statutes in other States very similar in their purport and tenor to ours, it has been frequently held that a married woman may make all needful contracts respecting her own business or her own property, but that she is incapable of binding herself as surety for her husband or any other person, upon executory contracts, or upon a commercial paper. 15 Am. and Eng. Ency. of Law (2 Ed.), pp. 697, 698; Nash v. Mitchell, 71 N. Y. 199; Russell v. Bank, 39 Mich. 671; Detroit Cham. Com. v. Goodman, 110 Mich. 498; Howell's Stat. Mich., secs. 6295, 6296, 6297; Banking Co. v. Wright, 53 Neb. 374; Westervelt v. Baker, 76 N. W. 440; Warner v. Hess, 49 S. W. 489; Emmerson v. Knapp, 62 N. W. 945; Carriage Co. v. Pier, 74 Wis. 582; Fuller v. McHenry, 83 Wis. 573; Gayner v. Blewett, 86 Wis. 399; R. S. Wis. 1878, secs. 2340 to 2347; Inv. Co. v. Roop, 132 Pa. St. 503; Walter v. Jones, 148 Pa. St. 589; Dawes v. Radier, 125 Mass. 421; Harnden v. Gould, 126 Mass. 411; Browning v. Carson, 163 Mass. 255. A married woman can not become surety for her husband on a promissory note, unless the act of the Legislature or the decree of the court authorizing her to trade on her own account, confers upon her all the powers of a *femme sole*.   The intention must be so manifest as to leave no doubt as to the extent

of the power given. Bidwell v. Robinson, 79 Ky. 29; Lane v. Bank, 43 S. W. 442; Skinner v. Lynn, 51 S. W. 167; 14 Am. and Eng. Ency. of Law (1 Ed.), pp. 620, 623, 625, 626, and notes. (4) The evidence was sufficient to justify the court in finding that Mrs. Taylor, without negligence, signed the note and deed of trust, by reason of the fraud of Kubach, and in total ignorance of their true character. Shirts v. Overjohn, 60 Mo. 312; Fredericks v. Clemens, 60 Mo. 313; Bank v. Clark, 52 Mo. App. 597. Under the circumstances of this case, the fraud practiced upon Mrs. Taylor, vitiated this note and deed of trust, no matter in whose hands they are found. The evidence clearly shows that this ignorant, illiterate and weak-minded old woman was prevented from even attempting to ascertain the true character of the papers by the fraud and trick of Kubach in concealing their appearance, as well as falsely stating their character and contents. It is held in many cases, some of which are very similar to this in their facts, that a party who executes a note under such circumstances, is not liable upon it, even in the hands of a bona fide purchaser. Walker v. Ebert, 29 Wis. 194; Chapman v. Tucker, 38 Wis. 43; Griffiths v. Kellog, 39 Wis. 290; Green v. Wilkin, 98 Iowa, 74; Vanbrunt v. Singley, 85 Ill. 281; Webb v. Corbin, 78 Ind. 403; Baldwin v. Bricker, 86 Ind. 221; Hopkins v. Ins. Co., 57 Iowa, 203. (5) The plaintiff is not entitled to protection as a bona fide purchaser of the note and deed of trust. (a) The note was void as to Mrs. Taylor because of her coverture. (b) The note was also void as to her because it was obtained from her by fraud and deceit and was not her conscious act. (c) The plaintiff does not plead in his reply that he was a bona fide purchaser, for value, in good faith, without notice. Holsworth v. Shannon, 113 Mo. 524; Ins. Co. v. Smith, 117 Mo. 293; Garrett v. Wagoner, 125 Mo. 464. (d) Under all the evidence in the case, the

court was justified in finding that plaintiff was not a purchaser for value, in good faith, of the note. Plaintiff was not an innocent purchaser of the note. Cass Co. v. Green, 66 Mo. 498; Studebaker v. Dickson, 70 Mo. 272; Henry v. Sneed, 99 Mo. 407; Whaley v. Neill, 44 Mo. App. 316; Bank v. Hainline, 67 Mo. App. 484; Chouteau v. Allen, 70 Mo. 341; Tiedeman Com. Pap., sec. 291; Taylor v. Atchison, 54 Ill. 118. (e) This note was not transferred in the usual and customary manner, according to the constant practice of the business world. It was payable to the National Fence Machine Company or bearer. It could have been transferred by mere delivery, without incurring any liabilities on the part of the transferrer, and the transferee would acquire all the rights of a bona fide holder if he took it in good faith. Such is the usual and customary method of transferring commercial paper payable to bearer. But in this case, the payee not only made a written indorsement, without recourse, on the note, but executed and acknowledged before a notary public an assignment of "all its right, title and interest" in and to the note and mortgage, and in said instrument of assignment solemnly protested and agreed that it was, at the delivery thereof, the sole owner of the same. And this instrument was immediately recorded. Merriam v. Bank, 8 Gray, 54; Richardson v. Lincoln, 46 Mass. 201; Reed v. Warner, 5 Paige, 650; Gebhart v. Sorrells, 9 Ohio St. 461; Ayer v. Hutchins, 4 Mass. 370; Hatch v. Barrett, 34 Kans. 223; Nichols v. Levins, 15 Iowa, 362; Aniba v. Yeomans, 39 Mich. 171. (f) But again, plaintiff not only did not take this note in due course of trade, but in fact he took no title to it at all, for the reason that Kubach had no power to sell and transfer, at a large discount or otherwise, the notes and securities of the corporation; and his attempt to do so is void, and conferred no title on his assignee. That such an officer or agent as he is shown to be has no such power, and

that his acts are void and confer no title upon his assignee, is established by the great weight of authority. Hyde v. Larkin, 35 Mo. App. 365; Ferguson v. Trans. Co., 79 Mo. App. 352; 2 Cook on Corp. (4 Ed.), secs. 716, 717, 719, and notes; Titus v. Railroad, 37 L. J. L. 98; Kansas, etc., v. Devol, 72 Fed. 717; Bank v. Hamlin, 14 Mass. 178; Wheat v. Bank, 5 S. W. 305; Smith v. Lawson, 18 W. Va. 212; Calumet Pap. Co. v. Haskell Show P. Co., 144 Mo. 331. And such an assignment being void, and conferring no title, the defendants may raise the question of its validity in this proceeding. Hyde v. Larkin, 35 Mo. App. 365; Calumet Pap. Co. v. Haskell S. P. Co., supra; Bank v. Bank, 155 Mo. 95.

BURGESS, J.—This is ejectment for the possession of a farm containing about one hundred and eight acres of land in Gentry county. The petition is in the usual form:

The defendants, though husband and wife, answered separately. In both answers, however, it is admitted that Mrs. Taylor is in the possession of the land, but all other allegations in the petition are denied. The answer of Mrs. Taylor then alleges that she is a married woman, having been married to her co-defendant on the eighth day of April, 1870; that she is the owner in fee of the land, having acquired title thereto by warranty deed on the twenty-second day of March, 1884, and that said deed contained no provision making said land her separate equitable estate; that the plaintiff claims title to the land by virtue of a trustee's sale thereof, made by one Frank Jones, on the fourth day of January, 1898, under a pretended deed of trust, claimed and alleged by said plaintiff to have been made, executed and acknowledged by this defendant and her said husband on the twenty-fifth day of November, 1895; that said deed of trust was false, fraudulent and forged, and not the act and deed of her, the said defendant, but was obtained from her by

fraud, deceit and misrepresentation, without her knowledge and consent.

The answer of the wife then proceeds to set out at length the fraud practiced upon her, which was, in brief: That on said date one Kubach appeared at her house in King City, in said county, and represented himself to be the general agent of the National Fence Machine Company, a corporation located in the State of Kansas, and that he had made and entered into a contract with her husband by which he was to act as agent of said company in the sale of its patent, and of machines, territory, etc., in certain counties in the State of Iowa; that the patent fence machine was a very useful article, and that he, Kubach, had made fabulous sums by its sale, etc.; that he represented that he had made a *"little contract"* with her husband, and wanted her to sign a contract or guaranty that her husband would faithfully look after the interests of the company in the territory to which he should be assigned; that he did not want her to give any mortgage or lien upon her land, but only the contract aforesaid; that she is poorly educated and could not read writing or printing except with the greatest difficulty; that she was practically without business experience; that Kubach presented to her a document partly written and partly printed; folded as to expose but a small portion of it, and assured her it was simply the contract above mentioned; that being deceived by him, and being unable, pressed and solicited as she was by Kubach, and from her experience in business matters, to detect the fraud, she did subscribe her name to two papers, or in two places as indicated by Kubach, and she has since been informed that the papers so signed, under the circumstances aforesaid, were a promissory note for $800, dated Stanberry, Mo., November 25, 1895, due on or before the first day of November, 1897, payable to said National Fence Machine Company, with interest at eight per cent per annum, and a deed of trust con-

veying the land described to one Frank Jones for the alleged purpose of securing said note.

It is also alleged in said answer that all of the statements and representations of Kubach were willfully false; that the note and deed of trust was not the act and deed of said defendant; that the certificate of acknowledgment thereto was false and untrue; and that she never acknowledged the same, or knew that she had executed such an instrument until long after the date thereof; that plaintiff, before he acquired any interest in said property had full knowledge of all the facts aforesaid; that defendant had no interest in said contract except, as she supposed, as surety for her husband for the faithful performance of his duties as agent; that said note and deed of trust were not given by her on her own account, or in the transaction of her own business, or in the purchase of property on her own account, nor did she have any interest whatever in the transaction which culminated in the execution of the papers aforesaid under the circumstances aforesaid, and that said promissory note was and is as to her void under the laws of this State. The answer concludes with a prayer for the cancellation of the deed of trust, trustees' deed and note.

The husband filed a separate answer of the same general tenor of that of the wife, though not in all respects similar to it, and concluding with a like prayer.

The plaintiff filed replies to said answers, which consisted merely of general denials of the allegations of new matter, but did not allege affirmatively that plaintiff was an innocent purchaser, in good faith, of the note and deed of trust, or of the land.

The trial was had before the court, who after having heard all the evidence, at the request of plaintiff made a finding of facts which is as follows:

"Now on this day, this cause coming on to be heard, come

the parties in person and by their counsel, and thereupon all and singular the matters are submitted to the court upon the pleadings and the proofs, and the court having fully considered the same, doth at the request and upon the motion of the plaintiff, make the following findings of fact, to-wit:

"1.    That the defendant, Maggie B. Taylor was the owner of the following lands, to-wit, the south half of the northeast quarter of section 21, and the northeast quarter of the northeast quarter of section 21, except fifteen acres out of the northeast quarter thereof; also 3.02 acres out of the southeast corner of the northwest quarter of the northeast quarter of section 21, all in township 61, of range 31, in Gentry county, Missouri, containing 108.02 acres, conveyed to her in 1884 by warranty deed, which deed did not by its terms give her a separate equitable estate therein.    That she was married to the defendant, L. W. Taylor in 1870.

"2.    The court further finds that on the twenty-fifth day of November, 1895, L. W. Taylor met one Kubach at Stanberry, Missouri, and entered into negotiations with said Kubach for the purchase of territory or for the sale of certain fence machines. That on said day Kubach, Kubach's wife and one Richard P. Duncan, a notary public, after having prepared a certain note and deed of trust, which were there signed by L. W. Taylor, went to King City, a distance of thirteen miles, for the purpose of getting defendant Maggie B. Taylor to sign said note and deed of trust.    The court further finds that said deed was placed before Mrs. Taylor for the purpose of securing her signature, folded so as to expose but one-fourth or less of the instrument, and the defendant directed or told where to sign her name.    About the same time the said promissory note was placed upon the table, Kubach so holding his hands as to conceal its contents and pointed out the place thereon where Mrs. Taylor should sign the same.    Mrs. Taylor stated that she would

not sign a note or mortgage, whereupon Kubach stated to her that the paper she was about to sign was not a lien on her land, that it was simply a contract that Mr. Taylor would faithfully perform his duty in selling fence machines. That as soon as signed, both the note and deed of trust were placed in the pocket of said Kubach. That Mrs. Taylor did not knowingly sign the note and deed of trust, but was led by Kubach to believe that the paper she signed was only a contract. That afterwards Richard P. Duncan, notary public aforesaid, appeared at the house of Mrs. Taylor, but neither asked her as to her knowledge of the instrument nor presented the same to her, nor in fact took the acknowledgment thereof. It further appears from the evidence that Taylor, the husband of the defendant, Maggie B. Taylor, had prearranged matters with Kubach by which he, Kubach, was to procure in some manner the wife's signature to the note and deed of trust. Mrs. Taylor had no knowledge—was wholly ignorant—at the time Kubach obtained her signature to the note and deed of trust, of the part her husband was taking in the matter.

"3.   The court further finds that the note and deed of trust was wholly without consideration and obtained from Maggie B. Taylor, the defendant, by fraud, deceit and misrepresentations of said Kubach. That said Maggie B. Taylor is a woman possessed of limited education and no great strength of mind.

"4.   The court further finds that the plaintiff herein, George P. Leavitt, procured the note pretended to be secured by said deed of trust from Kubach under circumstances such as would place him on his inquiry as to the same, and considering his financial circumstances, was in no condition to purchase a note of this amount. That he only paid $585, according to his own statement, for said note, which note on its face was for the sum of $800, bearing interest at eight per cent from date.

"5.   The court further finds that at the sale of the land

under the pretended deed of trust, notice was given that said deed of trust was invalid. That the purchase was made by agents of the plaintiff, Leavitt, for the alleged consideration of one hundred dollars.

"Wherefore, the court finds that the plaintiff, Leavitt, was neither an innocent purchaser of the note and deed of trust, nor of the land on which said note was alleged to be secured."

The court then rendered the following judgment and decree:

"It is therefore by the court ordered, adjudged and decreed that the said deed of trust so executed by the defendants on the twenty-fifth day of November, 1895, to Frank Jones, trustee, for the National Fence Machine Company, pretending to convey the land aforesaid, and the trustee's deed executed by said Frank Jones on a sale thereunder to the plaintiff on the fourth day of January, 1898, and each of them, be set aside, cancelled and for naught held, and that the said plaintiff be divested of all title and interest in and to the real estate hereinbefore, and in said deed of trust and in said trustee's deed described, and that the title thereto be fully re-invested in the defendant, Maggie B. Taylor. It is further ordered, adjudged and decreed that the said promissory note, so executed as aforesaid, be cancelled and for naught held. It is further ordered, adjudged and decreed that said plaintiff take nothing by his said writ, and that the defendants have and recover of the plaintiff and his sureties on the bond for costs, their costs in this behalf expended, taxed at $53.95, and that they have execution therefor."

After unsuccessful motions for new trial and in arrest, plaintiff appeals.

At the request of plaintiff, the court made a finding of facts separate and apart from the conclusions of law, and as no exception was taken thereto it stands as a special verdict or an agreed case, and if the conclusions of law under the facts as

found were correct, the judgment must be affirmed. [Blount v. Spratt, 113 Mo. 48; Freeman v. Moffitt, 119 Mo. 280; Land Company v. Bretz, 125 Mo. 418; Loewen v. Forsee, 137 Mo. 38; Hughes v. Ewing, 162 Mo. 261.]

But, notwithstanding the finding of facts to the contrary, the point is made that the evidence is not sufficiently clear, cogent and convincing to overcome the certificate of acknowledgment of the notary public to the deed of trust, but as no exception was taken to that finding plaintiff is concluded thereby. Otherwise a finding of fact would, under such circumstances, be but an idle ceremony, if it could be shown not to be in accordance with the evidence. Moreover, such finding is not the subject of review by this court in the absence of an exception to it in the first place.

If the finding stands as a special verdict, as we have said it does, and plaintiff had desired to have it reviewed by this court upon the ground that it is not supported by the evidence, he should have filed his exceptions to it, and if overruled, saved his exceptions.

The court not only found that the note was obtained from Mrs. Taylor by fraud, deceit and misrepresentation, but that it was without consideration, and that the plaintiff Leavitt was neither an innocent purchaser of the note and deed of trust, nor of the land on which said note was alleged to be secured.

Under the facts as found, there can be no doubt as to the correctness of the conclusions of law reached by the court in so far as Mrs. Taylor is concerned.

But as to L. W. Taylor, the situation is different. As to him no finding of facts was made, and as the case is one in equity it is practically triable *de novo* in this court, and while it will defer somewhat to the conclusions reached by the trial court under the evidence it will not be bound absolutely thereby.

It is well settled that mere suspicion alone that a negotiable

note is without consideration, or was obtained by fraud, brought home to the transferee before he acquires the note, will not be sufficient to defeat a recovery upon the note by him, but in order to do so actual notice of the facts which impeach the validity of the note must be brought home to him (Mayes v. Robinson, 93 Mo. 114; Borgess Inv. Co. v. Vette, 142 Mo. 560) in regard to the circumstances under which the note and deed of trust were executed.

L. W. Taylor, whose evidence stands uncontradicted, testified that by the terms of his agreement with Kubach, the agent for the National Fence Machine Company, in consideration for the note, it was to convey by deed to him the exclusive right to sell in three counties named in the State of Iowa, a patent fence machine of great utility and value, of which said machine said Kubach represented and stated that said company was the owner, but that he never received said deed or anything else in consideration for the note, and that the machine was of no practical utility or value. That he had never seen or heard of Kubach since. Plaintiff is a loan agent or broker at Paola, Kansas. He testified that he never met Kubach until about twenty days before he claims to have bought this note; that he had bought some small notes from him. He knew Kubach was a patent right man, and that the note was given for a patent right. He knew that the company claimed to be a corporation, and that several of its officers were bankers. He knew that the defendant Maggie B. Taylor was a married woman, that she had acquired this land in 1884, and that she lived in Missouri. He also knew that the land was subject to a prior deed of trust. Kubach offered to pay half his expenses to Missouri to investigate the matter. He paid $585 only for the note, which is for $800 and secured by deed of trust on real estate.

Under these circumstances, he admits that he made no inquiry as to the right of Kubach to transfer the note; that he

made no inquiry into the solvency of the note or the value of the security; that he made no investigation as to whether the note of a married woman was valid under the laws of Missouri.

When asked to state what he was worth on the fourth day of February, 1896, he gave a detailed statement of his assets, showing that he had no money with which to pay $585 for this note. He produced upon the trial a check payable to Kubach for that amount, but he did not even swear that it had been paid. He did not produce the evidence of either Kubach or the banker to show that he had ever actually paid Kubach the amount claimed. He was asked by his counsel this question: "Has either Kubach or this National Fence Machine Company had any interest in this note since you bought it." And he answered: "Not the company, no, sir; in any way, shape or form."

The note was payable to the company or bearer. But when plaintiff took it he required Kubach to indorse it in the name of the corporation, by him as general agent, and at the same time he executed and acknowledged a formal assignment of both the note and deed of trust, whereby the National Fence Machine Company assigned to the plaintiff the mortgage and note, "and all its right, title and interest in and to the same," and agreed that "at the delivery hereof it is the sole owner of the same." This assignment and the acknowledgment thereof were indorsed upon the deed of trust, and then the entire instrument was refiled for record by the plaintiff and was so recorded. It therefore appears that plaintiff knew that the note was the property of the corporation, and not that of Kubach, and yet he made no investigation of the right or power of Kubach to sell or transfer it, and made his check to Kubach personally.

Under this state of facts can it be doubted for one moment that the note was obtained by fraud, and fraudulent representations upon the part of Kubach, agent for the National Fence Machine Company, and that it was without any consideration

whatever? This is the inevitable conclusion from defendant's testimony, which is unimpeached and not contradicted. Then, when we consider the facts and circumstances under which plaintiff claims to have purchased the note, which are unnecessary to repeat, we are forced to the conclusion that he had knowledge of its infirmities when he took it, and that the deed of trust being incident to the note, both are void in his hands.

The conclusion reached is not only borne out by the evidence, but is in accordance with the finding and judgment of the trial court.

The judgment is affirmed. *Sherwood, P. J.,* and *Gantt, J.* concur.