STATE of Missouri ex rel. Robert FRANCE-SCONI and Angelina Francesconi, D/B/A International Terrazzo & Mosaic Flooring Company, Plaintiffs-Respondents,

v.

AETNA CASUALTY & SURETY COMPANY and Sharp Brothers Contracting Company, Defendants-Appellants.

Nos. 23299, 23300.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1961.

Harry P. Thomson, Jr., Thomas J. Leittem, Kansas City, Shughart, Thomson, Stark & Kilroy, Kansas City, of counsel, for appellants.

Herbert M. Rope, Arnold N. Shanberg, Rope, Shanberg & Rope, Kansas City, for respondents.

MAUGHMER, Commissioner.

This appeal reached the writer by way of reassignment.

Section 107.170 of the statutes requires the contractor for state public works to furnish a bond conditioned upon payment for all materials and labor used thereon. Section 522.300 authorizes a person furnishing such labor or materials to sue on that bond in the name of the state. It was under these provisions that the State of Missouri became a nominal party partic-ipant in this case. The purpose of the bond requirement is to provide persons furnishing labor and material the bond security in lieu of mechanics' liens which are inapplicable to public property. Camdenton Consol. School Dist. No. 6 of Camden County ex rel. W. H. Powell Lumber Co. v. New York Casualty Co., 340 Mo. 1070, 104 S.W.2d 319, 322.

Plaintiffs, Robert and Angelina Francesconi, son and mother, d/b/a The International Terrazzo & Mosaic Flooring Company, are engaged in the business of furnishing and installing terrazzo flooring. A terrazzo floor consists of crushed marble mixed with cement—then ground and trowelled. Defendant Sharp Brothers Construction Company on December 17, 1957, was awarded a contract by the State of Missouri (Department of Public Health and Welfare) for the construction of three dormitory buildings at the Missouri State School, Higginsville, Missouri, at a total cost of $880,986. Defendant Aetna Casualty & Surety Company is surety on the prime contractor's (Sharp) performance bond.

The specifications provided for terrazzo flooring in all three buildings totaling 46,000 square feet. The three dormitories to be built were alike as to size and as to the amount of terrazzo floor in each building. Plaintiffs by a written subcontract dated January 15, 1958, agreed to furnish all labor and materials and to do all of the terrazzo work in accordance with the general over-all plans and specifications for a consideration of $49,000. Plaintiffs performed fully as to two of the buildings and were paid $18,429.40 by Sharp. By letter dated February 9, 1959, Sharp terminated plaintiffs' contract as to the third building and that work was done by another subcontractor, Frank Corazin, on a "cost plus" basis, which amounted to approximately $21,000.

Plaintiffs' petition is in two counts. Count 1, after identifying the parties, recites the general contract, the subcontract,

charges a breach by Sharp, then alleges complete performance as to the two dormitories and asserts that by reason thereof defendant Sharp became obligated to plaintiffs in the amount of $32,667.67 for materials and labor expended on the two buildings, acknowledges receipt of $18,429.40 as payment thereon and asks judgment for the difference of $14,237.27. Count 2 sought recovery of $2,446.87 as prospective profit allegedly lost through denial of opportunity to perform as to the third building. Defendants denied generally and Sharp counterclaimed for $23,288.60, asserting damages in this amount by reason of plaintiffs' alleged delay in performance and the cost of completion as to building number three. The verdict and judgment was for plaintiffs under Count 1 in the sum of $14,237.27, the amount sued for. The finding and judgment was for defendants under Count 2 and against defendant Sharp on its counterclaim. Both defendants appealed from the adverse judgment on Count 1 and defendant Sharp appealed from the judgment on the counterclaim.

■ The parties hotly contested as to whether plaintiffs or Sharp or other subcontractors occasioned the admitted delay. Sharp contended the plaintiffs did not get the materials, equipment and workmen on the job promptly. Francesconi said the general contractor's progress was not timely and that he worked as quickly as the buildings were ready for him. We think there was substantial evidence both ways as to responsibility for the delay, but the jury decided this disputed factual issue and since the sufficiency of the evidence is not questioned on appeal, we need not discuss the question extensively. We believe it was for the jury.

Mr. Francesconi testified that his actual cost outlay for labor and materials on the two buildings was $27,772.92, although plaintiffs asked judgment for two-thirds of the over-all contract price for the two buildings which were completed and claimed such a recovery would be reasonable.

■■ Appellants list eight assignments of error on appeal. No. 8 asserts the verdict on the counterclaim should not stand because the jury on their first return reported a finding as to Counts 1 and 2, but no finding as to the counterclaim. The Court directed the jury to go back, make a finding on the counterclaim and return it as a part of the verdict. The jury did so. This procedure was quite proper. In Kaimann v. Kaimann Bros., Inc., Mo.App., 182 S.W.2d 458, 462, the court said: "Where the jury returns a verdict containing a patent ambiguity or defect, it is the duty of the court, at the time the verdict is read, to call the jury's attention to such ambiguity or defect so that the jury itself may correct its verdict before it is received and judgment entered thereon." Nor do we consider the verdict to be inconsistent. It was a finding for plaintiffs on the petition and against defendant Sharp on the counterclaim which arose out of the same matter. Any other finding on the counterclaim in the light of the verdict on the petition would, we think, have been inconsistent.

■ The other seven assignments allege error in giving Instructions 1, 2, 3 and 4, and especially Nos. 1 and 2. Appellants' basic challenge of these instructions is that both breach of contract and quantum meruit were submitted when quantum meruit was not pleaded, and that these two separate submissions are inconsistent and improper. Instruction No. 4 had to do with allowance of damages if the verdict was for plaintiffs under Count 2 (for loss of profits on the third building). Instruction No. 3 listed the requisites for a plaintiff verdict under Count 2. Since the verdict and judgment is for defendants under Count 2, it is difficult to rule prejudicial error against defendants from these instructions. With respect to Count 2, the utmost defendants could have received would have been a finding and verdict for defendants. They received exactly that. The chief appellate controversy has to do with the correctness of Instruc-

tions numbered 1 and 2, and we set out the texts thereof:

"Instruction No. 1.

\* \* \* \* \* \*

"The Court further instructs the jury that it is admitted that on or about December 10, 1957, plaintiffs submitted to Defendant-Sharp the written proposal mentioned in evidence covering certain Terrazzo work in dormitory buildings of the Missouri State School in Higginsville, Missouri; that thereafter, prior to January 15, 1958, the Defendant-Sharp submitted to plaintiffs an instrument styled 'Subcontract', mentioned in evidence, covering said Terrazzo work, and that the plaintiffs inserted in said written subcontract the following words:

" 'Conditions and articles in proposal of International Terrazzo dated December 10, 1957, to become a part of this contract;'

that plaintiffs signed said written subcontract with said words inserted by them and returned same to Defendant-Sharp; and the Court instructs the jury that if you find and believe from the evidence that Defendant-Sharp accepted said written subcontract with the foregoing words inserted therein by plaintiffs or, if you find and believe from the evidence that after the return thereof to the Defendant-Sharp, the acts and conduct of the Defendant-Sharp were such as to lead an ordinarily prudent person acting in good faith to believe that said written subcontract with the foregoing words inserted was accepted, and if you find that plaintiffs did, in good faith, if so, believe that same was accepted, and if you further find and believe that, by reason of the foregoing facts and circumstances, if you so find them, plaintiffs did furnish all of the labor and materials to complete and did complete all of the terrazzo work in Buildings

'C' and 'D' mentioned in evidence, in accordance with the terms and conditions of said written subcontract, if so, and if you further find and believe that the plaintiffs prosecuted the work provided for by said written subcontract with such diligence as was reasonably possible, if so, under the conditions and circumstances affecting the work, as you may find from the evidence existed, if so, then you are instructed your verdict will be in favor of the plaintiffs and against the Defendant-Sharp and the Defendant-Aetna under Count I of plaintiffs' petition."

"Instruction No. II.

"The Court instructs the jury that if your verdict is in favor of the plaintiffs and against the defendants under Count I of plaintiffs' petition, you may award the plaintiffs damages thereunder in such amount as will reasonably compensate them for reasonable value of labor and materials furnished to that portion of the work which you find they completed, less the sum of $18,429.40 heretofore paid plaintiffs by Defendant-Sharp. In this connection, the Court instructs the jury that the price of $49,000.00 set forth in the written subcontract is presumed to be the reasonable value of the labor and materials required to perform the entire subcontract, and if your verdict is in favor of the plaintiffs and against the defendants, you may take into consideration in assessing plaintiffs' damages under Count I that proportion of the entire subcontract which you find and believe from the evidence plaintiffs completed and you may award plaintiffs as damages under Count I that proportion of the total contract price, less the sum of $18,429.40 which has been paid the plaintiffs, and you may allow plaintiffs interest on such award, if any, at the rate of six (6%) per cent per annum from the date which you find plaintiffs completed such work."

Appellants argue strenuously that (1) suit for breach of contract and on quantum meruit are inconsistent and plaintiffs can sue on one but not on both; (2) that plaintiffs' petition is for breach of contract but Instruction No. 2 authorizes recovery on quantum meruit; (3) the jury was not required to find that plaintiffs suffered any damage; (4) there was neither allegation nor proof that the amount sued for and recovered was the reasonable value of the labor and materials furnished or that the work was performed in a workmanlike manner and (5) the jury was not required to find as a prerequisite to plaintiffs' recovery that Sharp had breached the contract.

Civil Rule 55.12 (Sec. 509.110 V.A.M.S.) V.A.M.R. permits a party to set forth two or more statements of a claim either in one or separate counts. The purpose, the effect is to enable parties to submit the whole controversy in a single action and avoid a multiplicity of suits. On this subject generally in Lee-Schermen Realty Co. v. Rueffel et ux., Mo.App., 176 S.W.2d 655, 657, the court said: " * * * it is also the settled law that a count based on an expressed contract may be joined with a count based on quantum meruit. * * * And furthermore it has been held, that plaintiff cannot be compelled to elect on which count he will go to the jury." However, we do not consider determination of this question as decisive of our case.

■ Count 1 of plaintiffs' petition alleged the contract, performance in accordance with the plans and specifications as to two buildings, the breach precluding performance as to the third building, and prayed recovery for two-thirds of the contract price as and for payment for work and materials furnished. Their second count asked damages for loss of anticipated profits · as to building three, but that count is now out by reason of the jury's verdict.

Instruction No. 1 told the jury that for plaintiffs to recover on Count 1 there must be a finding of (1) entry into the sub-

contract; (2) furnishment of all materials and labor necessary to complete the terrazzo work in buildings one and two, and completion thereof in accordance with the terms and conditions of the subcontract, (This included the over-all specifications which were by reference made a part of the subcontract) and (3) that plaintiffs prosecuted the work with such diligence as was reasonably possible. The jury found for plaintiffs under Count 1 and so reached all of these enumerated and essential conclusions. No contention was made at the trial or on appeal that the work done on the two buildings was not done properly or in a workmanlike manner. The dispute revolved around its *timeliness* and who was responsible for the delay. We believe Instruction No. 1 is a good and proper instruction, is complete, is in conformity with the pleadings and issues raised during the trial and authorizes a verdict for plaintiffs.

■ The next question then, if there is a verdict for plaintiffs under Count 1, is determination of the amount of recovery, which in turn requires measurement of damages. The Court undertook to and did instruct thereon by Instruction No. 2. By this instruction the Court said really two things: First, the damages should be in an amount that will reasonably compensate for the labor and materials furnished for the two completed buildings, less the amount admittedly paid by Sharp and second, in determining this reasonable amount the contract price is presumed to be the reasonable value of the labor and materials required. There was no evidence offered or contention made that the contract price was other than reasonable, and reasonable value for building installations has long been held to include not only the actual cost of the supplies but a reasonable profit. Kansas City Structural Steel Co. v. Athletic Bldg. Ass'n et al., 297 Mo. 615, 249 S.W. 922(2).

In Smith d/b/a Cape Asphalt Paving Co. v. Ray M. Dilschneider, Inc., 283 S.W. 2d 631, 634–635, the Supreme Court quot-

ed with approval the following from Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824, 829: "'The plaintiff does not repudiate the contract nor seek to avoid it in indebitatus assumpsit as for the quantum meruit, but offers the contract in evidence and his proof of compliance with it to sustain his case. The agreed price, if there is an agreed price, becomes prima facie evidence of the reasonable value of the service. But plaintiff may not recover more than the agreed price. (Citations.)'"

This court in Cross, d/b/a Eighteenth Street Lumber Co. v. Robinson, 281 S.W. 2d 22, 26, discussed a similar situation and reached a like conclusion: "As we understand her argument, she asserts that this instruction submits plaintiff's measure of recovery upon *reasonable value* of the services rendered and material furnished, and also upon the contract price. In other words, submits both on quantum meruit and on the contract. She misconceives the meaning of the instruction. It submits plaintiff's measure of recovery 'at the reasonable value of the work and material as shown by the evidence, but governed by the contract price of $950, * * *'. The rule is that in a suit on quantum meruit based upon a contract, the plaintiff cannot recover in excess of the contract price. That is the meaning of plaintiff's instruction number 2. 24 L.R.A.[N.S.], Note I, page 327. Almost this identical instruction, under similar issues, was approved by the court in Yeats v. Ballentine, 56 Mo. 530, 534. There is no merit in this contention."

In 25 C.J.S. Damages § 71, p. 560, the general rule is set out: "Stated broadly, the measure of compensatory damages is such sum as will compensate the person injured for the loss sustained, with the least burden to the wrongdoer consistent with the idea of fair compensation." The footnotes thereto quote from Davis v. Standard Rice Co., Tex.Civ.App., 293 S.W. 593, 598: "The primary purpose of rules for the measurement of damages is to give fair and just compensation for loss, and no rule which would defeat this purpose when ap-

plied to the facts of a particular case should be followed in that case." The Syllabus (1 & 2) to Moore v. Board of Regents, 215 Mo. 705, 115 S.W. 6, declares the rule as follows: "A building contractor who fails to perform his contract is entitled to recover the reasonable value of work done and materials furnished by him, and appropriated by the owner, not exceeding the contract price, less any damages suffered by the owner by reason of nonperformance of the contract." "A building contractor who is wrongfully forbidden by the owner to carry out his contract is entitled to recover the reasonable value of the work done and materials furnished by him and appropriated by the owner, without diminution by damages suffered by the owner by the contractor's failure to complete the contract."

Our review of Instruction No. 2 has been restricted to the contentions raised, preserved and presented to this court and while we do not give general approval to the instruction or recommend it for future use, we find no reversible error as to the points raised and considered.

■ Under Count 1, plaintiffs, if Sharp wrongfully breached the contract as the jury found, were entitled to recover the reasonable value of the materials and labor furnished. For plaintiffs to recover under Count 2 for loss of anticipated profits, had they been permitted to complete the third building, required substantial affirmative proof of loss. Such proof in the usual case is speculative. It is affected by weather, varying material costs, possible strikes and might be lessened by another advantageous contract timely secured. We think there was judgment and reason in the jury's verdict.

In this case it is conceded that two-thirds of the work agreed to be done was done. The verdict and judgment is for two-thirds of the contract price. The record justifies the conclusion that the terrazzo flooring was competently laid of good materials and in a workmanlike man-

ner. We find no reversible error in appellants' assignments. We have examined the many cases cited by appellants but are not thereby persuaded that reversible error was here committed.

Since the recovery is for work and materials, the performance bond undertaken by defendant Aetna is liable for the unpaid balance which is the amount of the judgment. Interest at the statutory 6 percent rate was properly assessed.

The judgment herein is in all respects affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.